Filed 7/8/15  P. Terronez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>RALPH EDWARD TERRONEZ,<br><br>     Defendant and Appellant. | F068055<br><br>(Super. Ct. No. F11906758)<br><br><br>**OPINION** |

-ooOoo-

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Fresno County.  Don Penner, Judge.

Jake Stebner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P. J., Gomes, J. and Peña, J.

After being found incompetent to stand trial, defendant Ralph Edward Terronez was committed to Atascadero State Hospital until he was found to have regained his competence. When he was returned to court, he pled no contest to various counts and was granted probation. He later violated the terms of his probation and was sentenced to prison for the upper term of three years.

On appeal, he contends he was entitled to more custody credits for the time he spent at the hospital after being declared competent but before being returned to court. He maintains he did not forfeit this claim by failing to file a formal motion with the trial court. We agree and direct the trial court to recalculate defendant's custody credits.

## DISCUSSION

*Forfeiture*

At the sentencing hearing on September 9, 2013, the trial court granted 698 days of custody credit, as recommended by the probation officer: 312 actual days, 312 good/work time days, and 74 treatment days. Defendant did not object. But on March 18, 2014, defendant prepared a letter entitled "**Informal request to modify presentence custody credits**."[1] The letter was also served on this court, the attorney general, the district attorney, and the public defender. It was received by our court on March 24, 2014.

On April 18, 2014, defendant submitted another letter to the trial court, asking the court to advise him whether a decision would be forthcoming and informing the court that he would pursue a formal motion if the court declined to consider the informal request.[2] This letter was served on and received by this court on April 23, 2014.

---

[1]     Our copy of this document does not bear a stamp of the superior court, so it is unclear when it was filed.

[2]     Our copy of this document also lacks a superior court stamp.

On May 8, 2014, the trial court responded to defendant's informal request in a written document, stating: "Judge Penner has reviewed your letter for Informal Request to Modify Presentence Custody Credits and has denied your request at this time. The previous orders and sentence on 09/09/2013 remain." This stamped document was served on the same entities and was received by our court on May 12, 2014.

Defendant contends he did not forfeit the custody credit claim because he raised it before the trial court by way of the informal letter. The People, on the other hand, argue defendant was required to make a formal motion and thus is barred by Penal Code section 1237.1[3] from raising his claim for the first time on appeal.

Section 1237.1 provides:

> "No appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court."

In *People v. Fares* (1993) 16 Cal.App.4th 954 (*Fares*), the court stated that "[i]f a dispute arises as to the correct calculation of credit days, such should be presented on noticed motion" to the court that imposed sentence. (*Id.* at p. 958.)

In *People v. Clavel* (2002) 103 Cal.App.4th 516 (*Clavel*), the court, relying on *Fares*, concluded that a letter motion was inadequate to preserve the issue of presentence custody credit on appeal. The *Clavel* court stated,

> "[B]oth section 1237.1 and *Fares* itself explicitly require that a formal motion be filed in the trial court. Neither the statute nor the opinion suggests that an informal letter will suffice. (See § 1237.1 [no appeal shall be taken unless defendant 'first makes a motion for correction of the record in the trial court']; *People v. Fares*, *supra*, 16 Cal.App.4th at p. 958 ['If a dispute arises as to the correct calculation of credit days, such should be presented on noticed motion' to the court that imposed sentence].) That

---

**3**    All statutory references are to the Penal Code.

there may also be a workable informal method of requesting correction of erroneous awards of presentence custody credits does not change the fact that once the matter is before us on appeal, the record must show that the defendant first filed a motion in the trial court raising the issue and requesting relief. (See § 1237.1; *Fares*, at p. 958.)

"The difference between a formal motion and an informal letter is significant. Unlike a letter, a motion is necessarily a part of the record and compels judicial response. It is noteworthy that the trial court in this case apparently did not find it necessary to rule on the request set forth in the letter or respond to it in any other way. This informal procedure does not meet the needs of an orderly appellate process; nor does it fully protect the interests of criminal defendants.

"Because the record on appeal contains neither a motion to amend the abstract of judgment to correct the alleged miscalculation of presentence custody credits, nor a trial court ruling on such a motion, the present appeal must be dismissed. Appellant of course is free to file a motion in the trial court requesting relief. (See *People v. Fares*, *supra*, 16 Cal.App.4th at p. 958 ['There is no time limitation upon the right to make the motion to correct the sentence.'].)" (*Clavel*, *supra*, 103 Cal.App.4th at pp. 518-519, fn. omitted.)

In a footnote, the court stated:

"We do wish to make clear, however, that nothing in this opinion prohibits counsel from initially attempting to resolve the credit miscalculation issue by way of an informal letter to the trial court. Nor is there any court rule that prohibits the trial court from entertaining an informal letter and ruling on the matter if the court so chooses. (See, e.g., Cal. Rules of Court, rule 201(j).)" (*Clavel*, *supra*, 103 Cal.App.4th at p. 519, fn. 4.)

In this case, defendant sought relief from the trial court by way of an informal letter rather than a formal motion. All parties involved were served. The trial court considered the informal letter and ruled against defendant. All parties were served with the court's ruling.

While we recognize the utility of a formal motion in some situations, we see none here. The parties were informed and given an opportunity to respond. Although the trial court was not required to consider the informal letter, it chose to do so and denied

4.

defendant's request. Under these circumstances, requiring defendant to now submit a formal motion would likely serve no purpose. Presumably, the trial court would deny the motion a second time. Thus, we conclude that under these circumstances, defendant's informal letter was sufficient to preserve the custody credit issue on appeal.

*Merits*

"Typically, an accused awaiting trial is not statutorily entitled to conduct credits for time spent in a state hospital while subject to a finding of incompetency. [Citations.] However, our Supreme Court has explained that the Courts of Appeal have held equal protection principles may require a pretrial detainee [to] receive conduct credits for time spent in a nonpenal facility: 'Section 4019 provides that its formula for good behavior credit applies to persons detained, prior to felony sentencing, in specifically enumerated *local facilities*, including "*county* jail[s], industrial farm[s], or road camp[s] or … *city* jail[s], industrial farm[s], or road camp[s]." (*Id.*, subd. (a)(4), italics added.) The statute does not apply to presentence time spent receiving treatment "in [such] nonpenal institutions … as state hospitals." [Citation.] However, it has been held that equal protection requires application of section 4019 credits to presentence confinement in a state facility if the circumstances of the confinement are essentially penal. [Citations.]' [Citation.]" (*People v. Bryant* (2009) 174 Cal.App.4th 175, 182-183 (*Bryant*).)

In *Bryant*, the defendant was declared incompetent to stand trial and was committed for treatment to restore his competency. The Court of Appeal concluded the defendant was entitled to section 4019 credits as of the date state hospital staff prepared and served a report stating that his competency had been restored, rather than the subsequent date the medical director's designee executed and served a section 1372 certification of the defendant's competence.[4] (*Bryant*, *supra*, 174 Cal.App.4th at pp. 183-

---

[4] Section 1372 provides in part: "(a)(1) If the medical director of the state hospital or other facility to which the defendant is committed, or the community program director, county mental health director, or regional center director providing outpatient services,

5.

184, fn. omitted.) The court stated: "[O]ur opinion should not be read as holding that the very instant competency is restored, the right to conduct credits accrues. The Legislature has provided for an orderly process in sections 1371 and 1372 for evaluating patients and returning them to court when their competence is regained. But when the uncontradicted evidence demonstrates the accused's competency was unquestionably regained as of a date certain, as occurred here on May 21, 2007, the defendant is entitled to section 4019 conduct credits even though the section 1372, subdivision (a)(1) certification has not been mailed to the trial court." (*Id.* at p. 184.)

In this case, on September 26, 2012, hospital staff prepared a six-page section 1370 court report recommending that defendant be returned to court as competent to stand trial.[5] This report was signed by Brandon Yakush on October 1, 2012, and by

determines that the defendant has regained mental competence, the director shall immediately certify that fact to the court by filing a certificate of restoration with the court by certified mail, return receipt requested. For purposes of this section, the date of filing shall be the date on the return receipt. [¶] (2) The court's order committing an individual to a state hospital or other treatment facility pursuant to Section 1370 shall include direction that the sheriff shall redeliver the patient to the court without any further order from the court upon receiving from the state hospital or treatment facility a copy of the certificate of restoration. [¶] (3) The defendant shall be returned to the committing court in the following manner: [¶] (A) A patient who remains confined in a state hospital or other treatment facility shall be redelivered to the sheriff of the county from which the patient was committed. The sheriff shall immediately return the person from the state hospital or other treatment facility to the court for further proceedings. [¶] (B) The patient who is on outpatient status shall be returned by the sheriff to court through arrangements made by the outpatient treatment supervisor. [¶] (C) In all cases, the patient shall be returned to the committing court no later than 10 days following the filing of a certificate of restoration. The state shall only pay for 10 hospital days for patients following the filing of a certificate of restoration of competency. The State Department of State Hospitals shall report to the fiscal and appropriate policy committees of the Legislature on an annual basis in February, on the number of days that exceed the 10-day limit prescribed in this subparagraph. This report shall include, but not be limited to, a data sheet that itemizes by county the number of days that exceed this 10-day limit during the preceding year."

[5]    Section 1370, subdivision (b)(1) provides in part: "Within 90 days of a commitment made pursuant to subdivision (a), the medical director of the state hospital

6.

David Fennell on October 2, 2012. Attached to the report, was a certification of defendant's mental competency pursuant to section 1372, signed by David Fennell and Thomas Cahill (the medical director) on October 1, 2012. When the trial court later granted custody credits, it followed the probation officer's calculation of 74 treatment days for defendant's hospitalization from July 27, 2012, to October 8, 2012.

Defendant, however, contends there was uncontradicted evidence he had regained his competency as of September 26, 2012, the date the report was initiated pursuant to section 1372, subdivision (a)(1). He acknowledges, however, that this report was not signed until October 1 and 2, 2012, and he recognizes that we may conclude his competence was not unanimously endorsed until that time.

This is indeed our interpretation of the record. The September 26, 2012, report was signed by one doctor on October 1, 2012, and by the other on October 2, 2012. But the doctor who signed it on October 2, 2012, had already signed the certification of defendant's mental competency on October 1, 2012, so he was clearly in agreement as of October 1, 2012, that defendant had regained his competency. Thus, we conclude the uncontradicted evidence demonstrated that defendant's competency was unquestionably regained as of October 1, 2012, and defendant was therefore entitled to section 4019 conduct credits (rather than treatment days) for the time he spent in the hospital from October 1, 2012, until his return to court.

or other treatment facility to which the defendant is confined shall make a written report to the court and the community program director for the county or region of commitment, or a designee, concerning the defendant's progress toward recovery of mental competence and whether the administration of antipsychotic medication remains necessary…. Thereafter, at six-month intervals or until the defendant becomes mentally competent, if the defendant is confined in a treatment facility, the medical director of the hospital or person in charge of the facility shall report in writing to the court and the community program director or a designee regarding the defendant's progress toward recovery of mental competence and whether the administration of antipsychotic medication remains necessary…. A copy of these reports shall be provided to the prosecutor and defense counsel by the court."

## **DISPOSITION**

The judgment is modified to award defendant conduct credits from October 1 through October 8, 2012. The matter is remanded to the trial court to recalculate the conduct award and so modify the judgment. The court is directed to prepare an amended abstract of judgment and minute order and forward them to the appropriate entities. As so modified, the judgment is affirmed.